UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **CARLYN GORDON, ET AL.** | **CIVIL ACTION** |
| **VERSUS** | **NO.  12-396-SDD-RLB** |
| **AIR LIQUIDE-BIG THREE INC., ET AL.** | |

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have fourteen (14) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law and recommendations therein.  Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

**ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.**

Signed in Baton Rouge, Louisiana, on June 19, 2013.

    _____
    **RICHARD L. BOURGEOIS, JR.**
    **UNITED STATES MAGISTRATE JUDGE**

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **CARLYN GORDON, ET AL.** | **CIVIL ACTION** |
| **VERSUS** | **NO.  12-396-SDD-RLB** |
| **AIR LIQUIDE-BIG THREE INC., ET AL.** | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter is before the court on plaintiffs' Motion to Remand.[1]  The motion is opposed.[2]  There are two issues before the court.  The first issue is whether the amount in controversy is sufficient to support subject matter jurisdiction under 28 U.S.C. §1332(a) (diversity) or 28 U.S.C. § 1332(d) (Class Action Fairness Act).  The second issue is whether one of the defendants was improperly joined to this action and should be ignored for determining whether there is complete diversity under 28 U.S.C. §1332(a)(1).

### Background

The five named plaintiffs, one of whom is a minor, filed their class action petition in Louisiana state court on May 23, 2012.  Defendants removed the action on July 2, 2012 asserting two bases of subject matter jurisdiction:  diversity under 28 U.S.C. §1332(a), which requires complete diversity of citizenship and over $75,000, exclusive of interest and costs, in controversy; and alternatively the Class Action Fairness Act (CAFA), 28 U.S.C. § 1332(d), which requires minimal diversity and an aggregate amount in controversy in excess $5,000,000, exclusive of interest and costs.

---

[1] Rec. Doc. 8.
[2] Rec. Doc. 9.

1

In their petition, plaintiffs allege that on May 21, 2012, they were injured by "a series of explosions and fires which took place" at a Port Allen, Louisiana facility owned or operated by defendants Air Liquide-Big Three, Inc., Air Liquide America, L.P., and Air Liquide America Specialty Gases, LLC.[3]  Plaintiffs allege that the series of explosions and fires resulted from the defendants' failure "to adequately train and supervise [their] employees in the packaging, inspection, handling, storage, and transportation of acetylene gas cylinders, tanks and storage facilities."[4]  Plaintiffs allege that they "are residents of a neighborhood in the vicinity" of the Port Allen facility and the explosions caused them and members of the proposed class various injuries, including "fright, fear, physical bodily injury, mental anguish, aggravation of medical conditions and a forced evacuation from their homes with all of its attendant difficulties and expenses."[5]  Plaintiffs allege causes of action based upon Louisiana tort law for negligence and strict liability.[6]  Plaintiffs allege that they are entitled to the following damages:

   A. Past and future pain, suffering, and disfigurement;
   B. Past and future emotional distress, anxiety and fear;
   C. Past and future medical expenses;
   D. Loss of income and earning capacity;
   E. Aggravation of pre-existing conditions;
   F. Property damages and diminution in value of property[;]
   G. Remediation costs;
   H. Cost for evacuation and living expenses while they were prevented from living in their homes;
   I. Loss of enjoyment of life;
   J. All other relief to which they may be entitled.[7]

Plaintiffs also allege that they are entitled to have the entire Port Allen facility "inspected to remove all improperly stored hazardous materials" and "to have a plan and process in place for

---

[3] Rec. Doc. 1-3, Petition for Damages ("Petition"), ¶ 1.
[4] Petition, ¶ 8.
[5] Petition, ¶¶ 1, 8.
[6] Petition, ¶¶ 9-13.
[7] Petition, ¶ 14.

2

early warning in the event of future accidents and for safe and orderly evacuation in the event of same."[8]

The petition was filed in state court as a class action under Louisiana Code of Civil Procedure article 591 *et seq.*[9] Plaintiffs allege that they are part of a putative class of potentially over 300 similarly situated individuals "based upon the houses located within the evacuation area and the people forced to evacuate their homes."[10] Plaintiffs also state that their counsel represented "over 100 people evacuated" at the time the petition was filed.[11]

Defendants timely removed this action to federal court based on diversity jurisdiction under 28 U.S.C. §1332(a), or alternatively CAFA jurisdiction under 28 U.S.C.§ 1332(d). In the Notice of Removal, defendants submitted that it is facially apparent from the petition that the jurisdictional amount has been satisfied on either basis of removal.[12]

Defendants assert that there is complete diversity of citizenship because all five of the named plaintiffs are citizens of Louisiana and all properly joined defendants are citizens of Delaware and Texas. Defendants allege, however, that Air Liquide-Big Three, Inc. (a citizen of Louisiana and Texas) was "fraudulently joined" to this matter and should be ignored for the purposes of establishing diversity jurisdiction. More specifically, defendants state that at the time of the incident Air Liquide-Big Three, Inc. had no ownership interest in, nor did any of its officers or employees have any operational or supervisory control over, "the Port Allen facility or any of the cylinders or products alleged to have been involved in the incident."[13] Defendants

---

[8] Petition, ¶ 15.
[9] Petition, ¶ 2.
[10] Petition, ¶¶ 16-17.
[11] Petition, ¶ 17.
[12] Rec. Doc. 1, Notice of Removal, at 11, 14.
[13] Notice of Removal, at 7.

3

further allege that at the time of the incident Air Liquide-Big Three, Inc. "was an inactive corporation with no assets, liabilities, or employees, and conducted absolutely no business in the state of Louisiana."[14]

In support of these assertions, defendants submitted an affidavit by Donna Dailey, an employee of Air Liquide USA LLC "familiar with the ownership of the Port Allen facility at the time of the alleged incident."[15] The affidavit states that on May 29, 1998, and effective on May 31, 1998, Air Liquide-Big Three Inc. "conveyed all of its assets and liabilities" in the Port Allen facility to its two shareholders and, therefore, had no ownership interest in, nor did any of its officers or employees have any operational or supervisory control over, the Port Allen facility at the time of the May 2012 incidents at issue in this litigation.[16] Attached to the affidavit is a copy of a Unanimous Written Consent of the Board of Directors of Air Liquide-Big Three, Inc. "declaring a special dividend to accomplish the referenced conveyance of assets and liabilities."[17] The affidavit states that Air Liquide-Big Three Inc. "was an inactive corporation with no assets, liabilities, or employees, and conducted absolutely no business in the state of Louisiana."[18] Finally, the affidavit states that Air Liquide America Specialty Gases LLC is "the current owner of the Port Allen facility at issue" in this litigation.[19]

### Argument of Parties

In support of their motion to remand, plaintiffs argue that their "individual claims are worth less than $75,000 and as a result the minimum jurisdictional amount for removal has not

---

[14] Notice of Removal, at 7.
[15] Rec. Doc. 1-2, D. Dailey Affidavit, ¶ 5.
[16] D. Dailey Affidavit, ¶¶ 7-8.
[17] D. Dailey Affidavit, ¶ 7 and Exhibit 1.
[18] D. Dailey Affidavit, ¶ 8.
[19] D. Dailey Affidavit, ¶ 14.

been met in this matter."[20]  Plaintiffs do not address whether the jurisdictional amount of $5,000,000 for removal under CAFA has been met,[21] nor do they contest that the parties are of diverse citizenship.

In opposition, defendants argue that it is facially apparent that the amount in controversy for diversity jurisdiction is satisfied under 28 U.S.C. §1332(a).  Defendants concede that they have the burden of proving, by a preponderance of the evidence, that the jurisdictional minimum is satisfied.  Defendants argue that the court should consider, when calculating the jurisdictional minimum, the potential recovery of attorneys' fees to be allocated amongst the named class representatives and the value of the right to be protected by plaintiffs' requested injunctive relief.  Defendants also reference various decisions involving allegations of chemical exposure exceeding the jurisdictional minimum of $75,000 for diversity jurisdiction under 28 U.S.C. §1332(a).[22]  Defendants argue that if the amount in controversy is satisfied where at least one of the named plaintiffs' claims meets the jurisdictional amount, then the court may exercise supplemental jurisdiction over the claims of the remaining named plaintiffs because those claims arise out of the same set of operative facts.

Similarly, defendants argue that there is jurisdiction under 28 U.S.C. § 1332(d) (CAFA) because, based upon the petition, there is minimal diversity and the amount in controversy

---

[20] Rec. Doc. 8-1.

[21] On the same day that plaintiffs filed their motion for remand (Rec. Doc. 8), they also sought leave to file their first supplemental and amending petition for damages to remove all class allegations raised in the original petition (Rec. Doc. 7).  In support of the motion, plaintiffs state that they "have reviewed the facts involved in this matter and do not feel that they are appropriate parties to represent a class in this matter nor do they feel that a class action is appropriate" (Rec. Doc. 7-1).  The court has not ruled on this motion.  The court notes, however, that generally "removal jurisdiction should be determined on the basis of the state court complaint at the time of removal, and . . . a plaintiff cannot defeat removal by amending it." *Cavallini v. State Farm Mut. Auto Ins. Co.*, 44 F.3d 256, 265 (5th Cir. 1995).

[22] Rec. Doc. 9, at 9-10 (citing cases).

5

exceeds $5,000,000 in the aggregate. Using plaintiffs' suggestion that the putative class consists of at least 300 persons, defendants argue that to reach the jurisdictional amount of $5,000,000 in the aggregate, each plaintiff would only have to recover $16,666 to reach the jurisdictional threshold.

## Law & Analysis

It is well settled that when faced with a motion to remand "the removing party bears the burden of establishing the facts necessary to show that federal jurisdiction exists." *Allen v. R&H Oil & Gas Co.*, 63 F.3d 1326, 1335 (5th Cir.), *rehg. denied*, 70 F.3d 26 (5th Cir. 1995). The court will first determine whether defendants have met their burden with regard to establishing subject matter jurisdiction under 28 U.S.C. §1332(a) (diversity) before turning to the alternative ground of jurisdiction under 28 U.S.C. §1332(d) (CAFA).

**A. Amount in Controversy**

Because plaintiffs in Louisiana state courts may not plead a numerical value of claimed damages,[23] the Fifth Circuit has established a framework for resolving disputes over the amount in controversy for actions removed based on diversity jurisdiction from Louisiana courts. *Gebbia v. Wal-Mart Stores, Inc.*, 233 F.3d 880, 882-83 (5th Cir. 2000). In such cases, the removing defendant must show, by a preponderance of the evidence, that the jurisdictional

---

[23] Louisiana Civil Code article 893(A)(1) provides that while no specific monetary amount of damages shall be included in the allegations or prayer for relief of any original, amended, or incidental demand, "if a specific amount of damages is necessary to establish . . . the lack of jurisdiction of federal courts due to insufficiency of damages, . . . a general allegation that the claim exceeds or is less than the requisite amount is required." Plaintiffs did not allege that their claim was for less than the required jurisdictional amount. While this factor supports finding that the plaintiffs' claims are not for less than the amount required for diversity jurisdiction, it is not determinative and is considered in light of other evidence. *See Weber v. Stevenson*, 2007 WL 4441261, at *4 (M.D. La. Dec. 14, 2007); *Joseph v. State Farm Mut. Auto. Co.*, 2011 WL 2899127, at *2 (E.D. La. July 18, 2011).

amount is satisfied in one of two ways: (1) by demonstrating that it is facially apparent from the petition that the claim likely exceeds $75,000; or, (2) by setting forth facts—preferably in the removal petition, but sometimes by affidavit—which support finding that the required amount is present. *Grant v. Chevron Phillips Chemical Co. L.P.*, 309 F.3d 864, 868 (5th Cir. 2002).[24]

Whatever the manner of proof, the jurisdictional facts that support removal must be judged at the time of removal. *Gebbia*, 233 F.3d at 883. If at the time of removal it is facially apparent from the petition that the amount in controversy exceeds $75,000, post-removal affidavits, stipulations, and amendments reducing the amount do not deprive the court of jurisdiction. *Id.*; *Asociacion Nacional de Pescadores a Pequena Escalal O Artesanales de Colombia (ANPAC) v. Dow Quimica de Colombia S.A.*, 988 F.2d 559, 565 (5th Cir. 1993), *cert. denied*, 510 U.S. 1041 (1994). However, post-removal affidavits, stipulations, and amendments may be considered in determining the amount in controversy if the basis for jurisdiction is

---

[24] *See also* 28 U.S.C. § 1446(c)(2) (considering state practice for pleading a specific sum of damages for purposes of evaluating a defendant's assertion of the amount in controversy in notice of removal). 28 U.S.C. § 1446(c), as amended by the Federal Courts Jurisdiction and Venue Clarification Act of 2011, Pub.L. No. 112–63, 125 Stat. 758 (2011), provides:

> If removal of a civil action is sought on the basis of the jurisdiction conferred by section 1332(a), the sum demanded in good faith in the initial pleading shall be deemed to be the amount in controversy, except that—(A) the notice of removal may assert the amount in controversy if the initial pleading seeks—(i) nonmonetary relief; or (ii) *a money judgment, but the State practice either does not permit demand for a specific sum or permits recovery of damages in excess of the amount demanded*; and (B) removal of the action is proper on the basis of an amount in controversy asserted under subparagraph (A) if the district court finds, by the preponderance of the evidence, that the amount in controversy exceeds the amount specified in section 1332(a).

28 U.S.C. § 1446(c)(2) (emphasis added). The new provision of Section 1446 is consistent with the Fifth Circuit approach in requiring that the removing defendant prove by a preponderance of the evidence that the amount in controversy exceeds $75,000 when plaintiffs do not request a specific amount in damages. *See Firmin v. Richard Const., Inc.*, 2012 WL 5332998 (E.D. La. Oct. 26, 2012); *Wright Family Investments, LLC v. Jordan Carriers, Inc.*, 2012 WL 2457664 (W.D. La. June 25, 2012).

ambiguous at the time of removal. *Gebbia*, 233 F.3d at 883; *ANPAC*, 988 F.2d at 565. If the defendant can produce evidence sufficient to show by a preponderance that the amount in controversy exceeds the jurisdictional threshold, the plaintiff can defeat diversity jurisdiction only by showing to a legal certainty that the amount in controversy does not exceed $75,000. *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938); *Grant*, 309 F.3d at 869; *De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1412 (5th Cir. 1995).

Furthermore, where a Louisiana class action has been removed, the court must attribute all awardable attorneys' fees to the class representatives to the exclusion of other members of the class. *Grant*, 309 F.3d at 870 (citing *In re Abbot Labs.*, 51 F.3d 524, 526-27 (5th Cir.1995)); *see Gines v. D.R. Horton, Inc.*, 2009 WL 1916485, at *5 (M.D. La. June 30, 2009) (amount in controversy satisfied where attorneys' fees for the entire class were attributed to the class representative for the purpose of calculating the amount in controversy). Based upon its interpretation of Louisiana Code of Civil Procedure article 595(A),[25] the Fifth Circuit has held that attorneys' fees are to be attributed entirely to the class representatives for the purpose of calculating the amount in controversy even where there is no separate Louisiana statute mandating an award of attorneys' fees. *Grant*, 309 F.3d at 876-77. In interpreting *Grant*, this court has recognized that class action attorneys' fees are "a common right of the class representatives" and, therefore, may be attributed to a single class representative for the purpose

---

[25] Louisiana Code of Civil Procedure article 595(A) states: "The court may allow the representative parties their reasonable expenses of litigation, including attorney's fees, when as a result of the class action a fund is made available, or a recovery or compromise is had which is beneficial, to the class." Plaintiff seeks the "cost of these proceedings" and specifically sought to have the class action certified "pursuant to the Louisiana Code of Civil Procedure article[s] 591-597," which necessarily includes Louisiana Code of Civil procedure article 595(A).

8

of determining the amount in controversy.  *See Dixon v. Nan Ya Plastics Corp.*, 2007 WL 4561136, at *4 (M.D. La. Dec. 20, 2007).

For the reasons advanced by defendants, the court finds that the jurisdictional amount of $75,000 under 28 U.S.C. §1332(a)(1) has been satisfied.  Neither party submitted any evidence regarding the specific amount in controversy in this matter.  Therefore, the issue is whether it is apparent, on the face of the petition, that one of the named plaintiffs' damages more likely than not exceeds the jurisdictional amount of $75,000.  Upon review of the allegations in the petition, the court finds that the amount in controversy more likely than not exceeds $75,000 as to at least one class representative when attorneys' fees are imputed.

The damages alleged in the petition, in and of themselves, give rise to an amount in controversy that more likely than not exceeds $75,000 for at least one class representative.  The petition alleges a wide-range of physical, emotional, and property injuries resulting from the explosion of "acetylene tanks and the disbursal of gases[,] fumes, fires and projectiles into the surrounding neighborhoods."[26]  Plaintiffs' alleged damages include past and future pain, suffering, and disfigurement; emotional distress, anxiety and fear; and medical expenses.[27]  The petition prays for damages including lost income and earning capacity, aggravation of pre-

---

[26] Petition, ¶ 12.

[27] Petition, ¶ 14.  Plaintiffs also seek injunctive relief in the form of a facility inspection and installation of some sort of early warning "plan and process."  Petition, ¶ 15.  The amount in controversy in an action for declaratory or injunctive relief is "the value of the right to be protected or the extent of the injury to be prevented."  *Leininger v. Leininger*, 705 F.2d 727, 729 (5th Cir. 1983); *St. Paul Reinsurance Co., Ltd. v. Greenberg*, 134 F.3d 1250, 1252-53 (5th Cir. 1998).  Here, without more detail regarding the inspection sought or early warning "plan and process" contemplated, the court is unable to set "the value of the right to be protected or the extent of the injury to be prevented" by the injunctive relief requested.

existing conditions, property damage, diminution in value of property, remediation costs,[28] evacuation costs, living expenses while evacuated from their homes, and loss of enjoyment of life.[29]

Although Plaintiffs do not describe the specific injuries sustained to each plaintiff, the alleged underlying events—explosions of acetylene tanks resulting in chemical exposure and disfigurement—support a finding that the alleged injuries are of a serious nature. In a case involving a chemical fire, the former jurisdictional amount of $50,000 was met where the plaintiffs alleged similar damages as in this matter:

> individual and familial suffering; injuries to physical and mental health, including, but not limited to, emotional distress and mental anguish from the knowledge of exposure to a hazardous substance; expenses incurred by reason of illness caused by the nuisance; fear and apprehension of further exposure to, and impact from, hazardous chemicals; economic and financial harm; loss of enjoyment of life and peaceful use of property; and, other consequential, incidental, general, and special damages

*In re 1994 Exxon Chem. Fire*, 558 F.3d 378, 388 (5th Cir. 2009). The plaintiffs in *Exxon Chem. Fire* did not allege disfigurement, as did the plaintiffs in this matter, which may add significantly toward reaching the amount in controversy. *See Aisola vs. ExxonMobil Corp.*, 2009 WL 1455788, at *2 (E.D. La. May 22, 2009) (holding in a chemical exposure case that a "claim for permanent disfigurement and disability alone supports a finding that it is facially apparent from the complaint that the amount in controversy requirement is met").

In addition to their claims related to personal physical injury, plaintiffs allege claims for emotional damages and evacuation costs. In a Louisiana tort action involving the evacuation of several thousand residents after a chemical fire involving a railcar, a jury awarded one plaintiff

---

[28] Remediation costs alone could well exceed the amount in controversy for one of the named plaintiffs. *See*, *e.g.*, *Simoneaux v. Amoco Production Co.*, 860 So. 2d 560 (La. App. 1st Cir. 2003) (award of $375,000 for remediation related to oil and gas activities on property).
[29] Petition, ¶ 14.

10

"$60,000.00 for physical pain and suffering, $25,000.00 for mental anguish, and $15,000.00 for evacuation/inconvenience." *See Adams v. CSX Railroads*, 902 So. 2d 413, 416 (La. App. 4th Cir. 2005).

Once attorneys' fees are imputed to and divided amongst the five class representatives, it is facially apparent that the amount in controversy exceeds $75,000 for at least one of the named plaintiffs. Assuming, conservatively, that each of the potential class members has a claim for only $5,000, then the total potential damages award is $1,500,000 for 300 potential class members. To determine reasonable attorneys' fees for a class action for the purpose of determining the amount in controversy, it is appropriate to use the "percentage of the fund" approach as opposed to the lodestar method based on hourly rates. *Evans v. Int'l Paper Co.*, 2011 WL 2559791, at *4 (W.D. La. June 28, 2011) (citing *White v. General Motors Corp.*, 718 So.2d 480, 509 (La. App. 1st Cir. 1998)).[30] A typical class action benchmark fee is equal to twenty-five percent of the common fund. *Evans*, 2011 WL 2559791, at *4 (citations omitted). The resulting $375,000 in potential attorneys' fees exceeds the $75,000 required to meet the jurisdictional amount if all attorneys' fees are attributed to a single class representative ($375,000 in attorneys' fees plus $5,000 in damages). The same result is reached if potential attorneys' fees are divided pro rata amongst the five class representatives ($75,000 in attorneys' fees plus $5,000 in damages).

Plaintiffs cannot circumvent this court's jurisdiction by stating, in support of their motion for remand, that their "individual claims are worth less than $75,000 and as a result the minimum

---

[30] *See also Blum v. Stenson*, 465 U.S. 886, 900 n. 16 (1984) (noting that for calculation of attorneys' fees under the "common fund doctrine," a reasonable fee is based on a percentage of the fund bestowed on the class).

11

jurisdictional amount for removal has not been met in this matter."[31]  Because the basis for jurisdiction was not ambiguous at the time of removal, plaintiffs cannot divest this court of jurisdiction through a post-removal filing purporting to stipulate to an amount in controversy below $75,000.  *St. Paul Mercury Indemnity Co.*, 303 U.S. at 294; *Gebbia*, 233 F.3d at 883; *ANPAC*, 988 F.2d at 565.

### B.  Improper Joinder[32]

In addition to satisfying the amount in controversy, defendants must prove that there is complete diversity for the court to exercise subject matter jurisdiction under 28 U.S.C. § 1332(a). Defendants have argued that although defendant Air Liquide-Big Three, Inc. is a Louisiana citizen, and therefore not a diverse defendant, it was improperly joined to this matter.

The party seeking removal based on improper joinder of a non-diverse defendant bears a "heavy" burden of proving that the joinder was improper.  *Travis v. Irby*, 326 F.3d 644, 649 (5th Cir. 2003).  Improper joinder of a non-diverse party can be proven when the removing defendant

---

[31] Rec. Doc. 8-1.  Plaintiffs generally may avoid removal to federal court by stipulating prior to removal that their claims are less than the federal jurisdictional requirement.  *See St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 294  (1938) ("If [a plaintiff] does not desire to try his case in the federal court he may resort to the expedient of suing for less than the jurisdictional amount, and though he would be justly entitled to more, the defendant cannot remove.").  Such stipulations, however, must be legally binding on all plaintiffs. *Standard Fire Ins. Co. v. Knowles*, 133 S. Ct. 1345, 1350  (2013) (pre-certification stipulation stating that class representative and members of proposed class would seek less than $5,000,000 in damages was not binding on the absent class members, and therefore could not defeat CAFA jurisdiction). Even if plaintiffs' attempt at entering into a post-removal stipulation to an amount in controversy less than $75,000 had some relevance with regard to this court's jurisdiction (which it does not), the plaintiffs Jeffery Domingue and Juenel Domingue have made no showing that they can enter into a binding stipulation with regard to the amount in controversy on behalf of their minor child without court approval.  *See* Louisiana Code of Civil Procedure article 4265; *Davidson v. Exxon Corp.*, 778 F. Supp. 909, 910 (E.D. La. 1991).

[32] Defendants use the term "fraudulent joinder."  The Fifth Circuit has stated its preference for the term "improper joinder."  *See Smallwood v. Illinois Cent. R. Co.*, 385 F.3d 568, 571 n. 1 (5th Cir. 2004).

establishes that there is "(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court." *Travis*, 326 F.3d at 646-47.  In the latter situation, "the test for [improper] joinder is whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against an in-state defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant." *Smallwood v. Illinois Cent. R. Co.*, 385 F.3d 568, 573-74 (5th Cir. 2004).

Generally, a court should "conduct a Rule 12(b)(6)-type analysis . . . to determine whether the complaint states a claim under state law against the in-state defendant." *Id*. However, where the plaintiff has omitted or misstated "discrete facts that would determine the propriety of joinder" the district court may "pierce the pleadings and conduct a summary inquiry." *Id*.  The court must resolve all disputed questions of fact and ambiguities in the controlling state law in favor of the plaintiffs. *Travis*, 326 F.3d at 649.  If the court concludes that the plaintiffs have any "possibility of recovery" against the party whose joinder is questioned" then joinder is proper and the case must be remanded for lack of subject matter jurisdiction.  *Id*.

The court finds that the removing defendants have satisfied their burden of providing that Air Liquide-Big Three, Inc. was improperly joined to this matter.  Plaintiffs have failed to assert claims against Air Liquide-Big Three, Inc. for which relief may be granted because, according to Ms. Dailey's affidavit, Air Liquide-Big Three, Inc. had no ownership interest in, nor did any of its officers or employees have any operational or supervisory control over, the Port Allen facility at the time of the alleged incidents.  Plaintiffs do not attempt to rebut these assertions through either evidence or argument.

Defendants have demonstrated that there is no reasonable basis to predict that plaintiff might be able to recovery against Air Liquide-Big Three, Inc. based on the allegations in the petition. Plaintiffs allege causes of action based upon Louisiana tort law for negligence and strict liability.[33] Plaintiffs' strict liability claims against Air Liquide-Big Three, Inc. must fail because the transfer of ownership of property severs the owner's exposure to liability under Louisiana Civil Code articles 2317 and 2322. *See Harris v. Forcenergy Gas Exploration Co.*, 1997 WL 466890, at *3-6 (E.D. La. Aug. 4, 1997).

In contrast to strict liability, a former owner is not fully absolved of liability for its own negligence by the transfer of ownership of property. *See id.*, at *6 (citing *Learson v. Bussey*, 691 So.2d 1301 (La. App. 4th Cir. 1997)). Under Louisiana law, "the former owner has a duty to advise or make the new owner aware of conditions which could pose a danger to others [and] where a defective thing is involved, not only can its owner be responsible for damages, but also the party who actually created the risk whether or not he is the owner." *Learson*, 691 So.2d at 1303.

Nevertheless, plaintiffs' allegations that Air Liquide-Big Three, Inc. was negligent would not survive a Rule 12(b)(6) motion to dismiss. Plaintiffs do not allege that Air Liquide-Big Three, Inc. breached its "duty to advise or make the new owner aware" of any dangerous conditions at the Port Allen facility when it transferred ownership approximately **14 years** before the incident at issue. Instead, plaintiffs allege that all three defendants *negligently operated* the Port Allen facility, including the alleged failure "to adequately train and supervise employees in the packaging, inspection, handling, storage and transportation of acetylene gas cylinders, tanks and storage facilities"; the alleged "storing and handling Acetylene storage units in a negligent

---

[33] Petition, ¶¶ 9-13.

manner"; and the alleged failure to warn the plaintiffs of the presence of "harmful substances on the site" and that the plaintiffs were at risk of damage from alleged "negligent operations . . . in manufacturing, packaging, storing, handling and transporting" those substances.[34] These allegations, and the other remaining allegations of negligence, are unrelated to the operations by Air Liquide-Big Three, Inc. at the Port Allen facility some **14 years** prior to the incident at issue.

Thus, unlike in *Harris*[35] and *Learson*,[36] the allegations of negligence in this action do not go to some allegedly defective condition that either was known to the former owner and either not repaired or concealed from the subsequent owner. Instead, the allegations of negligence in the petition go to the operations of the facility by the alleged owners, operators, and custodians of the Port Allen facility at the time of the alleged incident.[37] Air Liquide-Big Three, Inc. divested itself of ownership and control of the Port Allen some **14 years** prior to the alleged incident and, therefore, there is no reasonable basis to predict that Plaintiffs might be able to recovery against Air Liquide-Big Three, Inc. for alleged negligent acts occurring at and around the time of the incident at issue. Furthermore, even if plaintiffs could establish that Air Liquide-Big Three, Inc. is a parent company of its co-defendants, plaintiffs have not alleged that Air

---

[34] Petition, ¶ 9.

[35] In *Harris*, 1997 WL 466890, the court continued the former owner's motion for summary judgment where it sold its interest in an offshore platform about 3 years prior to when a piece of loose "angle iron" fell 35 feet and killed a worker. The court noted that each of the former owner's statements of uncontested material facts when to whether it relinquished ownership, but not to whether it "acted negligently in welding, or failing to repair, or failing to inspect the angle iron that allegedly injured" the decedent. *Id*., at *7.

[36] In *Learson*, 691 So.2d 1301, the court held that the plaintiff stated a cause of action against a former owner for negligence for injuries resulting from a "rotted wooden step" at a residential property where the former owner sold the property less than one month earlier. Specifically, the court held that if "the former owners, prior to the sale of the property, knew of a defective condition and concealed the problem by merely painting over them, rather than repairing or at least advising of their condition, then they may be responsible for plaintiff's injuries. *Id*. at 1303.

[37] Petition, ¶¶ 6-9.

Liquide-Big Three, Inc. knew or approved of any of the alleged negligent operations at the Port Allen facility.  *See Earls v. Medtec Ambulance Corp.*, 2012 WL 966428, at *2 n. 4 (E.D. La. Mar. 21, 2012) (quoting *Andry v. Murphy Oil, U.S.A., Inc.*, 935 So. 2d 239, 249-50 (La. App. 4th Cir. 2006) ("Louisiana law does not permit a court to hold the parent company liable for it subsidiary's actions without proof that the parent company knew of and approved those actions.").

## Conclusion

The court has subject matter jurisdiction under 28 U.S.C. §1332(a).  It is facially apparent from the petition that one of the named plaintiffs' damages more likely than not exceeds the jurisdictional amount of $75,000.  Defendants have shown by a preponderance of the evidence that Air Liquide-Big Three, Inc. was improperly joined and that there is complete diversity.  The court has supplemental jurisdiction over the claims of the remaining named plaintiffs because their claims arise out of the same set of operative facts.  *See* 28 U.S.C. §1367(a); *Exxon Mobil Corp. v. Allapattah Services Inc.*, 545 U.S 546 (2005).  Having found that jurisdiction under 28 U.S.C. §1332(a) (diversity) is present, it is not necessary to discuss jurisdiction under 28 U.S.C. §1332(d) (CAFA).

## RECOMMENDATION

Accordingly, it is the recommendation of the magistrate judge that Plaintiffs' Motion to Remand (Rec. Doc. 8) be **DENIED**.

Signed in Baton Rouge, Louisiana, on June 19, 2013.

_____
 **RICHARD L. BOURGEOIS, JR.**
 **UNITED STATES MAGISTRATE JUDGE**