# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **CAROLYN GORDON, ET AL.** | **CIVIL ACTION** |
| **VERSUS** | **NO.: 12-396-SDD-RLB** |
| **AIR LIQUIDE-BIG THREE INC., ET AL.** | **CONSOLIDATED CASES** |

| | |
|---|---|
| **THIS DOCUMENT PERTAINS TO:** | |
| **RAVEN FERNANDEZ, ET AL.** | **CIVIL ACTION** |
| **VERSUS** | **NO.: 13-356-SDD-RLB** |
| **AIR LIQUIDE-BIG THREE INC., ET AL.** | |

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have fourteen (14) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law and recommendations therein. Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

**ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.**

Signed in Baton Rouge, Louisiana, on January 27, 2014.

_____
**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **CAROLYN GORDON, ET AL.** | **CIVIL ACTION** |
| **VERSUS** | **NO.: 12-396-SDD-RLB** |
| **AIR LIQUIDE-BIG THREE INC., ET AL.** | **CONSOLIDATED CASES** |

| | |
|---|---|
| **THIS DOCUMENT PERTAINS TO:** | |
| **RAVEN FERNANDEZ, ET AL.** | **CIVIL ACTION** |
| **VERSUS** | **NO.: 13-356-SDD-RLB** |
| **AIR LIQUIDE-BIG THREE INC., ET AL.** | |

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION[1]

This matter is before the court on the Plaintiffs' Motion to Remand.[2] The motion is opposed.[3] There are two issues before the court. The first issue is whether the amount in controversy is sufficient to support subject matter jurisdiction under 28 U.S.C. §1332(a). The second issue is whether one of the Defendants was improperly joined to this action and should be ignored for determining whether there is complete diversity under 28 U.S.C. §1332(a)(1).

**I.    Background**

On May 17, 2012, the eight plaintiffs, one of whom is a minor, filed their Petition for Damages ("Petition") in the 18th Judicial District Court, West Baton Rouge Parish, Louisiana.

---

[1] Filed simultaneously with this Report and Recommendation is a Report and Recommendation concerning a motion to remand in another action consolidated with this matter, *Payne v. Air Liquide-Big Three Inc.*, No. 3:13-cv-358-SDD-RLB.
[2] R. Doc. 5. Unless otherwise noted, the record document citations pertain to civil action No. 13-356.
[3] R. Doc. 9.

1

In their Petition, the Plaintiffs allege that on May 21, 2012, they were injured by "a series of explosions and fires which took place" at a Port Allen, Louisiana facility owned or operated by defendants Air Liquide-Big Three, Inc., Air Liquide America, L.P., and Air Liquide America Specialty Gases, LLC.[4] The Plaintiffs allege that the series of explosions and fires resulted from the Defendants' failure "to adequately train and supervise [their] employees in the packaging, inspection, handling, storage, and transportation of acetylene gas cylinders, tanks and storage facilities."[5] The Plaintiffs allege that they "are residents of a neighborhood in the vicinity" of the Port Allen facility and the explosions caused them and members of the proposed class various injuries, including "fright, fear, physical bodily injury, mental anguish, aggravation of medical conditions and a forced evacuation from their homes with all of its attendant difficulties and expenses."[6] The Plaintiffs allege causes of action based upon Louisiana tort law for negligence and strict liability.[7] The Plaintiffs allege that they are entitled to the following damages:

    A. Past and future pain, suffering, and disfigurement;
    B. Past and future emotional distress, anxiety and fear;
    C. Past and future medical expenses;
    D. Loss of income and earning capacity;
    E. Aggravation of pre-existing conditions;
    F. Property damages and diminution in value of property[;]
    G. Remediation costs;
    H. Cost for evacuation and living expenses while they were prevented from living in their homes;
    I. Loss of enjoyment of life;
    J. All other relief to which they may be entitled.[8]

On June 4, 2013, the Defendants removed this action to federal court based on diversity jurisdiction under 28 U.S.C. §1332(a). In the Notice of Removal, the Defendants submit that it

---

[4] R. Doc. 1-3 at 2-6 ("Petition"), ¶ 1.
[5] Petition, ¶ 8.
[6] Petition, ¶¶ 1, 8.
[7] Petition, ¶¶ 9-13.
[8] Petition, ¶ 14. The Plaintiffs specifically allege that Plaintiff Raven Fernandez "sustained loss of income for three (3) days due to her being unable to get her work equipment from her home."

2

is facially apparent from the Petition that the jurisdictional amount has been satisfied.[9]  The Defendants also assert in their Notice of Removal that there is complete diversity of citizenship because all eight of the Plaintiffs are citizens of Louisiana and all properly joined defendants are citizens of Delaware and Texas.[10]  The Defendants allege, however, that Air Liquide-Big Three, Inc. (a citizen of Louisiana and Texas) was "fraudulently joined" to this matter and should be ignored for the purposes of establishing diversity jurisdiction.  More specifically, the Defendants state that at the time of the incident Air Liquide-Big Three, Inc. had no ownership interest in, nor did any of its officers or employees have any operational or supervisory control over, "the Port Allen facility or any of the cylinders or products alleged to have been involved in the incident."[11]  The Defendants further allege that at the time of the incident Air Liquide-Big Three, Inc. "was an inactive corporation with no assets, liabilities, or employees, and conducted absolutely no business in the state of Louisiana."[12]

In support of these assertions, defendants submit an affidavit by Donna Dailey, an employee of Air Liquide USA LLC "familiar with the ownership of the Port Allen facility at the time of the alleged incident."[13]  The affidavit states that on May 29, 1998, and effective on May 31, 1998, Air Liquide-Big Three Inc. "conveyed all of its assets and liabilities" in the Port Allen facility to its two shareholders and, therefore, had no ownership interest in, nor did any of its officers or employees have any operational or supervisory control over, the Port Allen facility at the time of the May 2012 incidents at issue in this litigation.[14]  Attached to the affidavit is a copy of a Unanimous Written Consent of the Board of Directors of Air Liquide-Big Three, Inc.

---

[9] R. Doc. 1 at 9.
[10] R. Doc. 1 at 5-7.
[11] R. Doc. 1 at 7.
[12] R. Doc. 1 at 7.
[13] R. Doc. 1-2 (D. Dailey Affidavit), ¶ 5.
[14] D. Dailey Affidavit, ¶¶ 7-8.

"declaring a special dividend to accomplish the referenced conveyance of assets and liabilities."[15] The affidavit states that Air Liquide-Big Three Inc. "was an inactive corporation with no assets, liabilities, or employees, and conducted absolutely no business in the state of Louisiana."[16] Finally, the affidavit states that Air Liquide America Specialty Gases LLC is "the current owner of the Port Allen facility at issue" in this litigation.[17]

## II.  Arguments of the Parties

In support of their motion to remand, the Plaintiffs argue that their "individual claims are worth less than seventy-five thousand dollars ($75,000.00) and as a result the minimum jurisdictional amount for removal has not been met in this matter."[18] The Plaintiffs do not contest that the parties are of diverse citizenship.

In opposition, the Defendants argue that it is facially apparent that the amount in controversy for diversity jurisdiction is satisfied under 28 U.S.C. §1332(a). The Defendants concede that they have the burden of proving, by a preponderance of the evidence, that the jurisdictional minimum is satisfied. The Defendants reference various decisions involving allegations of chemical exposure exceeding the jurisdictional minimum of $75,000 for diversity jurisdiction under 28 U.S.C. §1332(a).[19] The Defendants argue that if the amount in controversy is satisfied where at least one of the Plaintiffs' claims meets the jurisdictional amount, then the court may exercise supplemental jurisdiction over the claims of the remaining Plaintiffs because those claims arise out of the same set of operative facts.

---

[15] D. Dailey Affidavit, ¶ 7 and Exhibit 1.
[16] D. Dailey Affidavit, ¶ 8.
[17] D. Dailey Affidavit, ¶ 14.
[18] R. Doc. 5-1.
[19] R. Doc. 9 at 6-8; *see also* R. Doc. 1 at 8-10.

**III.  Law and Analysis**

    **A.  Amount in Controversy**

A defendant may remove "any civil action brought in a State court of which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a). When original jurisdiction is based on diversity of citizenship, the cause of action must be between "citizens of different states" and the amount in controversy must exceed the "sum or value of $75,000, exclusive of interest and costs." 28 U.S.C. § 1332(a)-(a)(1). Subject matter jurisdiction must exist at the time of removal to federal court, based on the facts and allegations contained in the complaint. *St. Paul Reinsurance Co., Ltd. v. Greenberg*, 134 F.3d 1250, 1253 (5th Cir. 1998) ("jurisdictional facts must be judged as of the time the complaint is filed"). Remand is proper if at any time the court lacks subject matter jurisdiction. *See* 28 U.S.C. §1447(c). The removal statute, 28 U.S.C. §1441, is strictly construed and any doubt as to the propriety of removal should be resolved in favor of remand. *Gasch v. Hartford Acc. & Indem. Co*., 491 F.3d 278, 281-82 (5th Cir. 2007).

If removal is sought on the basis of diversity jurisdiction, then "the sum demanded in good faith in the initial pleading shall be deemed to be the amount in controversy." 28 U.S.C. §1446(c)(2). If, however, the "State practice . . . does not permit demand for a specific sum . . . [removal] is proper if the district court finds, by the preponderance of the evidence, that the amount in controversy exceeds [$75,000]." 28 U.S.C. § 1446(c)(2)(A)(ii)-(B). The burden of proof is on the removing defendant to establish that the amount in controversy has been satisfied. *Luckett v. Delta Airlines, Inc.*, 171 F.3d 295, 298 (5th Cir. 1999). The defendant may make this showing by either (1) demonstrating that it is facially apparent that the claims are likely above $75,000, or (2) by setting forth facts in controversy that support a finding of the jurisdictional minimum. *Id*. If the defendant can produce evidence sufficient to show by a preponderance that

5

the amount in controversy exceeds the jurisdictional threshold, the plaintiff can defeat diversity jurisdiction only by showing to a legal certainty that the amount in controversy does not exceed $75,000. *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938); *Grant*, 309 F.3d at 869; *De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1412 (5th Cir. 1995).

### i. The Court's Ruling in *Gordon*

This court has previously issued a ruling on a motion to remand in a class action consolidated with this matter that involved the same underlying events at issue in this case. In *Gordon v. Air Liquide-Big Three Inc.*, No. 12-396, 2013 WL 3490725 (M.D. La. July 10, 2013), the court concluded that the jurisdictional amount was facially apparent once attorneys' fees were attributed to the named plaintiffs.

The petition in *Gordon* is nearly identical to the one in this action. In both petitions, the plaintiffs allege a wide-range of physical, emotional, and property injuries resulting from the explosion of "acetylene tanks and the disbursal of gases[,] fumes, fires and projectiles into the surrounding neighborhoods."[20] In both petitions, the plaintiffs allege damages for past and future pain, suffering, and disfigurement; past and future emotional distress, anxiety and fear; past and future medical expenses; loss of income and earning capacity; aggravation of pre-existing conditions; property damage and diminution in value of property; remediation costs; evacuation costs and living expenses while evacuated; and loss of enjoyment of life.[21]

An important distinction between the two cases, however, is that the *Gordon* petition alleged a class action under Louisiana law.[22] This distinction is significant because the removal of a Louisiana class action requires the court to impute awardable attorneys' fees to the class

---

[20] *Gordon*, 2013 WL 3490725, at *1; Petition, ¶ 12.
[21] *Gordon*, 2013 WL 3490725, at *1-2; Petition, ¶ 14.
[22] Another distinction is that the *Gordon* petition requested injunctive relief and the petition in the instant action does not. In *Gordon*, however, the court stated that the value of the plaintiffs' request for injunctive relief was indeterminable. *Gordon*, 2013 WL 3490725, at *5 n. 27.

6

representatives to the exclusion of other members of the class. *See Grant v. Chevron Phillips Chem. Co.*, 309 F.3d 864, 876-78 (5th Cir. 2002). In *Gordon*, the court concluded that, upon review of the allegations in the petition, "the amount in controversy more likely than not exceeds $75,000 as to at least one class representative when attorneys' fees are imputed." *Gordon*, 2013 WL 3490725, at *4. In reaching that conclusion, the court determined that the context of the underlying events supported a conclusion that the alleged injuries were of a serious nature. *Id*. at *5. The court also reviewed other chemical exposure actions with similar allegations where the amount in controversy was facially apparent. *See id.*[23]

Based on its review of the petition at issue, and relevant case law, the court in *Gordon* assumed a conservative estimate of damages of at least $5,000 for each of the potential class members. *Id*. With a class of 300 potential members, the total potential damages award for the class using this conservative estimate would be $1,500,000. *Id*. The court then applied the "percentage of the fund" approach, as opposed to the lodestar method based on hourly rates, to calculate the amount of attorneys' fees. *Id.* Using a typical class action benchmark fee of twenty-give percent of the common fund, the court attributed $375,000 as potential attorneys' fees to the five named plaintiffs (the class representatives). *Id*. Regardless of whether the potential attorneys' fees were attributed to all five named plaintiffs or divided pro rata amongst them, the jurisdictional amount of $75,000 was satisfied for at least one class representative (when both damages and fees were included) and the court could exercise supplemental jurisdiction over the remaining class members. *Id*.

---

[23] The court discussed *In re 1994 Exxon Chem. Fire*, 558 F.3d 378, 388 (5th Cir. 2009) (holding in a chemical fire action that the former jurisdictional amount of $50,000 was met) and *Aisola v. ExxonMobil Corp.*, No. 08-1150, 2009 WL 1455788, at *2 (E.D. La. May 22, 2009) (holding in a chemical exposure case that a "claim for permanent disfigurement and disability alone supports a finding that it is facially apparent from the complaint that the amount in controversy requirement is met").

Although not dispositive to its holding, the *Gordon* ruling contained language that supported a conclusion that the amount in controversy was facially apparent based solely on the alleged damages, without consideration of recoverable attorneys' fees. *See Gordon*, 2013 WL 3490725, at *5 ("The damages alleged in the petition, in and of themselves, give rise to an amount in controversy that more likely than not exceeds $75,000 for at least one class representative."). Because the petition in *Gordon* allowed for the recovery of attorney's fees, that holding did not necessarily reach the issue of whether the amount in controversy was facially apparent in the absence of a class allegation.

### ii.     The Instant Action

The petition in this action is virtually identical to the petition in *Gordon*. The only significant difference is the absence of class allegations in the instant petition. The court must therefore resolve an issue that was not required in *Gordon* and determine whether the amount in controversy is facially apparent in the absence of imputed attorneys' fees.

As in *Gordon*, the alleged underlying events in this action—explosions of acetylene tanks resulting in chemical exposure and disfigurement—support a finding that the alleged injuries are of a serious nature. In a case involving a chemical fire at a plant in this district, the Fifth Circuit concluded that the former jurisdictional amount of $50,000 was facially apparent where the plaintiffs alleged similar damages as in this matter:

> individual and familial suffering; injuries to physical and mental health, including, but not limited to, emotional distress and mental anguish from the knowledge of exposure to a hazardous substance; expenses incurred by reason of illness caused by the nuisance; fear and apprehension of further exposure to, and impact from, hazardous chemicals; economic and financial harm; loss of enjoyment of life and peaceful use of property; and, other consequential, incidental, general, and special damages.

*In re 1994 Exxon Chem. Fire*, 558 F.3d 378, 388 (5th Cir. 2009). In reaching that conclusion, the Fifth Circuit noted that "almost all of the plaintiffs seek punitive damages." *Id*. at 388. The

8

district court order denying remand, however, provided that the amount in controversy was satisfied in each of the individual consolidated actions "without regard" to any claims for exemplary damages. *In re 1994 Exxon Chem. Fire*, No. 94-MD-3, 2001 WL 36180255, at *14 (M.D. La. Apr. 19, 2001) ("In each of these 16 cases the amount in controversy is present based on the plaintiffs' allegations without regard to the claim for exemplary damages.").

That the plaintiffs in this action have additionally alleged disfigurement is significant. In *Aisola vs. ExxonMobil Corp.*, No. 08-1105, 2009 WL 1455788, at *2 (E.D. La. May 22, 2009), the court concluded that the damages alleged in *In re 1994 Exxon Chem. Fire* closely resembled the petition before the court, with the exception of the added claim for permanent disability and disfigurement.[24] The court concluded that, in a chemical exposure case, a "claim for permanent disfigurement and disability alone supports a finding that it is facially apparent from the complaint that the amount in controversy requirement is met." *Id*. The court noted that the "Plaintiffs would have to prove their damages, but on a motion to remand, the question before the Court is whether it is facially apparent the damages alleged exceed $75,000.00 at the time of removal." *Id*. The allegation of disfigurement in the context of a chemical exposure action, as in the instant petition, provides additional support for a finding that the amount in controversy is facially apparent.

In addition to their claims related to personal physical injury, plaintiffs allege claims for emotional damages and evacuation costs. As noted by the Fifth Circuit, allegations of "emotional distress, functional impairments, or disability" support a "substantially larger monetary basis for federal jurisdiction." *Simon v. Wal-Mart Stores, Inc.*, 193 F.3d 848, 851 (5th

---

[24] The plaintiffs in *Aisola* sought recover for "Past, present and future medical expenses; Past, present and future pain and suffering; Past, present and future mental anguish and inconvenience; Past, present and future lost wages; Permanent disability and disfigurement; and Any and all damages as may be shown at the trial on the merits." 2:08-cv-1105-KDE-DEK, Docket No. 1-1.

9

Cir. 1999). In a Louisiana tort action involving the evacuation of several thousand residents after a chemical fire involving a railcar, a jury awarded one plaintiff "$60,000.00 for physical pain and suffering, $25,000.00 for mental anguish, and $15,000.00 for evacuation/inconvenience." *See Adams v. CSX Railroads,* 902 So.2d 413, 416 (La. App. 4th Cir. 2005).

Finally, the plaintiffs also allege recovery for remediation costs.[25] The plaintiffs have alleged sufficient facts to support a finding that the explosions resulted in chemicals to be dispersed onto their property. Recovery of such costs can be significant. *See*, *e.g.*, *Simoneaux v. Amoco Production Co.*, 860 So. 2d 560 (La. App. 1st Cir. 2003) (award of $375,000 for remediation related to oil and gas activities on property).

Not all cases in this district, however, have resulted in a conclusion that the amount in controversy is facially apparent when analyzing categorical damages concerning a chemical spill. In *Perritt v. Westlake Vinyls Co., LP*, No. 12-254, 2013 WL 6451774 (M.D. La. Dec. 9, 2013), the court concluded that because the allegations in the petitions before it were too vague and conclusory to calculate attorneys' fees, the jurisdictional amount was not facially apparent. In *Perritt*, the court reviewed two similar but independent class action petitions seeking recovery for "personal injuries and symptoms due to the explosion and exposure to the released chemicals," including "fear, anguish, discomfort and inconvenience as well as pain and suffering, emotional distress, and psychiatric and psychological damages, evacuation, and property damages." *Id*. at *1. Describing its decision as a "close call," the court concluded that these allegations did not support a finding that the amount in controversy was facially apparent. *Id*. at *6. The court acknowledged that the release of chemicals from the explosion "created the *potential* for claims in excess of $75,000.00." *Id*. The court also acknowledged that because both petitions alleged class actions under Louisiana law, there was also "a *potential* for

---
[25] Petition, ¶ 14.

10

attorney's fees under La. C.C.P. art. 595, and that amount must be attributed to the class representative in assessing whether the jurisdictional minimum for diversity is satisfied." *Id.* The court concluded that despite the plaintiffs' potential for recovery, the Defendant did not demonstrate that one of the plaintiffs in each action would "more likely than not" recover more than the jurisdictional minimum. *Id.*

In reaching this conclusion, the court stated that the injuries alleged in the petitions were "vaguely stated" and constituted of "customary categories of damages set forth in personal injury actions, which provide the court with little guidance as to the *actual* damages incurred by the Plaintiffs." *Id.* (citing *Allen v. R& H Oil & Gas Co.*, 63 F.3d 1326, 1336 (5th Cir. 1995)). The court declined to impute attorneys' fees toward the calculation of the amount in controversy based on the vague and conclusory nature of the allegations in the two petitions. *See id.* at *7.

There are distinctions that can be drawn between the petitions analyzed in *Perritt* and those in the instant case as well as the other cases cited above that found that the amount in controversy was facially apparent. The plaintiffs in *Gordon* (as in the instant action) allege a "series of explosions and fires" resulting in "the disbursal of gases[,] fumes, fires and projectiles into the surrounding neighborhoods" and a forced evacuation from their homes. *Gordon*, 2013 WL 3490725, at *1, *5. In contrast, the plaintiffs in *Perritt* alleged only a single explosion and fire resulting in "shelter-in-place" within a one mile radius of the facility.[26] The plaintiffs in *Gordon* and *Aisola* (as in the instant action) specifically seek recovery for disfigurement, past and future medical expenses, and loss of wages/income. *See id*. at *1-2.[27] In contrast, the plaintiffs in *Perritt* do not allege these forms of damages. The plaintiffs in *Gordon* (as in the instant action) also seek recovery for remediation costs. *Id.* In contrast, the plaintiffs in *Perritt*

---

[26] 3:12-cv-253-BAJ-RLB, Docket. No. 1-1 at 2. The petition in *Perritt*, however, includes damages for evacuation.

[27] 2:08-cv-1105-KDE-DEK, Docket No. 1-1.

11

do not allege these forms of damages. These distinctions may account for, at least in part, the different result in *Perritt*.[28]

Taking the plaintiffs' claims in the alleged factual context, that is a series of explosions at a chemical plant leading to chemical exposure, the dispersal of projectiles, and a forced evacuation, as well as damages that included disfigurement, medical expenses, loss of income and earning capacity, and remediation; and considering the rulings by courts in similar actions, the undersigned recommends a finding that it is facially apparent that the amount in controversy for diversity jurisdiction has been satisfied in this action.

**B.     Improper Joinder**[29]

In addition to satisfying the amount in controversy, defendants must prove that there is complete diversity for the court to exercise subject matter jurisdiction under 28 U.S.C. § 1332(a). Defendants have argued that although defendant Air Liquide-Big Three, Inc. is a Louisiana citizen, and therefore not a diverse defendant, it was improperly joined to this matter. In *Gordon*, the court addressed this same assertion and found that diversity existed as Air Liquide-Big Three, Inc. was improperly joined. *Gordon*, 2013 WL 3490725, at *6-8.

The party seeking removal based on improper joinder of a non-diverse defendant bears a "heavy" burden of proving that the joinder was improper. *Travis v. Irby*, 326 F.3d 644, 649 (5th Cir. 2003). Improper joinder of a non-diverse party can be proven when the removing defendant

---

[28] Unlike in the instant case, however, *Perritt* did involve class allegations that would allow for the imposition of attorney's'fees as in *Gordon*. In contrast, the *Perritt* decision determined that the allegations in the two petitions before the court were too "conclusory" for the court to even approximate the amount of attorneys' fees recoverable. See *Perritt*, 2013 WL 6451774, at *7. The court also noted that the difficulty in calculating attorneys' fees in the decision was based, at least in part, on the absence of "additional facts which would help this Court ascertain the scope of the purported class, or potential fees that would result from the action." *Id.* at *4 n.5. It appears, therefore, that the *Perritt* decision concluded that the allegations in the petitions did not support any calculable amount in controversy, whether for the purpose of calculating attorneys' fees or otherwise.

[29] Defendants use the term "fraudulent joinder." The Fifth Circuit has stated its preference for the term "improper joinder." *See Smallwood v. Illinois Cent. R. Co.*, 385 F.3d 568, 571 n. 1 (5th Cir. 2004).

establishes that there is "(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court." *Travis*, 326 F.3d at 646-47. In the latter situation, "the test for [improper] joinder is whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against an in-state defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant." *Smallwood v. Illinois Cent. R. Co.*, 385 F.3d 568, 573-74 (5th Cir. 2004).

Generally, a court should "conduct a Rule 12(b)(6)-type analysis . . . to determine whether the complaint states a claim under state law against the in-state defendant." *Id*. However, where the plaintiff has omitted or misstated "discrete facts that would determine the propriety of joinder" the district court may "pierce the pleadings and conduct a summary inquiry." *Id*. The court must resolve all disputed questions of fact and ambiguities in the controlling state law in favor of the plaintiffs. *Travis*, 326 F.3d at 649. If the court concludes that the plaintiffs have any "possibility of recovery" against the party whose joinder is questioned" then joinder is proper and the case must be remanded for lack of subject matter jurisdiction. *Id*.

The court finds that the removing defendants have satisfied their burden of providing that Air Liquide-Big Three, Inc. was improperly joined to this matter. Plaintiffs have failed to assert claims against Air Liquide-Big Three, Inc. for which relief may be granted because, according to Ms. Dailey's affidavit, Air Liquide-Big Three, Inc. had no ownership interest in, nor did any of its officers or employees have any operational or supervisory control over, the Port Allen facility at the time of the alleged incidents. Plaintiffs do not attempt to rebut these assertions through either evidence or argument.

13

Defendants have demonstrated that there is no reasonable basis to predict that plaintiff might be able to recover against Air Liquide-Big Three, Inc. based on the allegations in the petition. Plaintiffs allege causes of action based upon Louisiana tort law for negligence and strict liability.[30] Plaintiffs' strict liability claims against Air Liquide-Big Three, Inc. must fail because the transfer of ownership of property severs the owner's exposure to liability under Louisiana Civil Code articles 2317 and 2322. *See Harris v. Forcenergy Gas Exploration Co.*, 1997 WL 466890, at *3-6 (E.D. La. Aug. 4, 1997).

In contrast to strict liability, a former owner is not fully absolved of liability for its own negligence by the transfer of ownership of property. *See id.*, at *6 (citing *Learson v. Bussey*, 691 So.2d 1301 (La. App. 4th Cir. 1997)). Under Louisiana law, "the former owner has a duty to advise or make the new owner aware of conditions which could pose a danger to others [and] where a defective thing is involved, not only can its owner be responsible for damages, but also the party who actually created the risk whether or not he is the owner." *Learson*, 691 So.2d at 1303.

Nevertheless, plaintiffs' allegations that Air Liquide-Big Three, Inc. was negligent would not survive a Rule 12(b)(6) motion to dismiss. Plaintiffs do not allege that Air Liquide-Big Three, Inc. breached its "duty to advise or make the new owner aware" of any dangerous conditions at the Port Allen facility when it transferred ownership approximately 14 years before the incident at issue. Instead, plaintiffs allege that all three defendants negligently operated the Port Allen facility, including the alleged failure "to adequately train and supervise employees in the packaging, inspection, handling, storage and transportation of acetylene gas cylinders, tanks and storage facilities"; the alleged "storing and handling Acetylene storage units in a negligent manner"; and the alleged failure to warn the plaintiffs of the presence of "harmful substances on

---

[30] Petition, ¶¶ 9-13.

the site" and that the plaintiffs were at risk of damage from alleged "negligent operations . . . in manufacturing, packaging, storing, handling and transporting" those substances.[31]  These allegations, and the other remaining allegations of negligence, are unrelated to the operations by Air Liquide-Big Three, Inc. at the Port Allen facility some 14 years prior to the incident at issue.

Thus, unlike in *Harris*[32] and *Learson*,[33] the allegations of negligence in this action do not go to some allegedly defective condition that either was known to the former owner and either not repaired or concealed from the subsequent owner.  Instead, the allegations of negligence in the petition go to the operations of the facility by the alleged owners, operators, and custodians of the Port Allen facility at the time of the alleged incident.[34]  Air Liquide-Big Three, Inc. divested itself of ownership and control of the Port Allen some 14 years prior to the alleged incident and, therefore, there is no reasonable basis to predict that Plaintiffs might be able to recover against Air Liquide-Big Three, Inc. for alleged negligent acts occurring at and around the time of the incident at issue.  Furthermore, even if plaintiffs could establish that Air Liquide-Big Three, Inc. is a parent company of its co-defendants, plaintiffs have not alleged that Air Liquide-Big Three, Inc. knew or approved of any of the alleged negligent operations at the Port Allen facility.  *See Earls v. Medtec Ambulance Corp.*, 2012 WL 966428, at *2 n. 4 (E.D. La. Mar. 21, 2012) (quoting *Andry v. Murphy Oil, U.S.A., Inc.*, 935 So. 2d 239, 249-50 (La. App. 4th Cir.

---

[31] Petition, ¶ 9.

[32] In *Harris*, 1997 WL 466890, the court continued the former owner's motion for summary judgment where it sold its interest in an offshore platform about 3 years prior to when a piece of loose "angle iron" fell 35 feet and killed a worker.  The court noted that each of the former owner's statements of uncontested material facts went to whether it relinquished ownership, but not to whether it "acted negligently in welding, or failing to repair, or failing to inspect the angle iron that allegedly injured" the decedent.  *Id*., at *7.

[33] In *Learson*, 691 So.2d 1301, the court held that the plaintiff stated a cause of action against a former owner for negligence for injuries resulting from a "rotted wooden step" at a residential property where the former owner sold the property less than one month earlier.   Specifically, the court held that if "the former owners, prior to the sale of the property, knew of a defective condition and concealed the problem by merely painting over them, rather than repairing or at least advising of their condition, then they may be responsible for plaintiff's injuries.  *Id*. at 1303.

[34] Petition, ¶¶ 6-9.

15

2006) ("Louisiana law does not permit a court to hold the parent company liable for its subsidiary's actions without proof that the parent company knew of and approved those actions.").

### IV. Conclusion

The court has subject matter jurisdiction under 28 U.S.C. §1332(a). It is facially apparent from the petition that one of the named plaintiffs' damages more likely than not exceeds the jurisdictional amount of $75,000. Defendants have shown by a preponderance of the evidence that Air Liquide-Big Three, Inc. was improperly joined and that there is complete diversity. The court has supplemental jurisdiction over the claims of the remaining named plaintiffs because their claims arise out of the same set of operative facts. *See* 28 U.S.C. §1367(a); *Exxon Mobil Corp. v. Allapattah Services Inc.*, 545 U.S 546 (2005).

### **RECOMMENDATION**

Accordingly, it is the recommendation of the magistrate judge that Plaintiffs' Motion to Remand (R. Doc. 5) be **DENIED**.

Signed in Baton Rouge, Louisiana, on January 27, 2014.

_____
**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**